## Taylor v. Wrather.

(Decided October 1, 1913).

### Appeal from Hickman Circuit Court.

Contracts—Partnership—Fraud—Mutual Mistake.—Where, under a contract for dissolution one partner was to take certain assets and discharge a certain debt, and the other partner was to take all the other assets and discharge all the liabilities of the firm, and certain contingent liabilities were estimated at about $600, whereas it developed that they were in excess of $5,000, thus clearly showing that the contract was entered into by mutual mistake of parties, the parties will not be held bound to the contract, although the defendant, in an action on the contract, failed to show that it was obtained by fraud.

BENNETT, ROBBINS & THOMAS and R. G. ROBBINS for appellant.

SHELBOURNE & SHELTON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On July 1, 1910, plaintiff, G. T. Taylor, and defendant, J. D. Wrather, entered into a partnership for conducting a grain and provender business in Union City, Tennessee, under the firm name of the Taylor Grain Company. Plaintiff had a two-thirds interest in the partnership, while Wrather had a one-third interest. They conducted the business until about October, 1910, when they entered into a contract of dissolution. That contract is as follows:

"We, G. T. Taylor and J. D. Wrather, both of Union City, Tenn., and doing business as partners under the firm name of Taylor Grain Co., have this day dissolved partnership on the following basis:

"The said J. D. Wrather for the consideration of all the profits the Taylor Grain Co. has made since Mr. Wrather's connection with the firm since July last, Mr. Wrather agrees and does assume all the liabilities of the

firm and agrees to give the unfinished business of the
Taylor Grain Co. accruing up to this date the necessary
care and attention and wind the same up and settle all
obligations as speedily as possible or as quick as it can
be done with the proper business management and at-
tention, J. D. Wrather becoming by virtue of this trade
the sole owner of all the accounts due the concern and
all the cash on hand either in the banks or other places.
He is also the owner of all the stock of the concern ex-
cept:

| | |
|---|---:|
| One car of oats which the firm has in the Planters Warehouse at Memphis, value 45310 ‡C... | 517.55 |
| One car and a piece of a car of oats 69620 ‡ at in Redman, McGee's Elevator at Cairo....... | 627.86 |
| ‡ of oats now in the warehouse, elevator and office of the Taylor Grain Co., at Union City, at .................................................................................. | 1559.76 |
| And except further ...............‡ hay in the warehouse at Union City at................................................... | 1403.17 |
| And except a little wheat in the elevator at Union City and estimated at 50 bushels, valued at ................................................................. | $48.25 |
| | $4156.59 |

"The articles excepted above the said G. T. Taylor
takes off of the said J. D. Wrather's at the prices above
mentioned which totals $4,156.59. It is further under-
stood and agreed that the said G. T. Taylor who will con-
tinue in the grain business and conduct the same of Tay-
lor Grain Co. will occupy, use and control the elevator,
warehouse, the grain office and scales and the office fix-
tures and belongings to said property for the price as
a rental of 6 per cent. per annum on the note which G.
T. Taylor holds against the said J. D. Wrather for
$2,111, or in other words the said Taylor operates and
controls the real estate and fixtures described above and
for the consideration of that right and privilege he
agrees that J. D. Wrather is to pay no interest on the
note which he holds against the said Wrather.

"As above said J. D. Wrather assumes all the lia-
bilities except that the said G. T. Taylor assumes and
agrees to pay one $4,000 note given by the said G. T.
Taylor and said J. D. Wrather to the Old National Bank
of Union City, Tenn., and for the further consideration
of Mr. Wrather accepting the above agreement and

trade, the said G. T. Taylor agrees to pay the said J. D. Wrather in cash $155."

Their method of conducting the business was as follows:

They shipped their provender to various markets in the south. On each shipment they would draw a draft for the cost thereof, with the bill of lading attached, on the broker or consignee to whom the produce was shipped. This draft would be cashed by the firm in their bank or banks at Union City, and the firm would take credit by the amount thereof, and if the broker or consignee or purchaser of the products failed to take same or pay the draft, then the Taylor Grain Company would make it good to the bank cashing the draft. At the time of the dissolution, the partnership had a large quantity of grain and hay in southern markets in the hands of brokers or commission merchants for sale, also a large quantity that had been bought on order and which was in transit and had not been settled for.

It will be seen that under the terms of the dissolution contract, plaintiff was to have certain grain and hay at Memphis, Tennessee; Cairo, Illinois, and Union City, Tennessee, which was valued at $4,156.59, which he agreed to take and pay off and discharge a certain note of about $4,000, due the Old National Bank of Union City, Tennessee. The balance of the proceeds of said grain and hay the plaintiff agreed to pay the defendant, and also an additional sum of $155. Defendant took all the other assets and property of the partnership and assumed all other liabilities. He was to give the unfinished business all the necessary care and attention, and wind it up and settle all obligations as speedily as possible. He was to have all accounts due the concern, and all the cash on hand, and all stock of the company, wherever situated. Any profits arising after the settlement of the firm's obligations were to be his.

After the dissolution the defendant failed to pay all the liabilities of the firm, and plaintiff was compelled to pay various liabilities, amounting in all to $3,169.81. To recover this sum plaintiff brought this action against the defendant, and asked that a certain deed of conveyance from defendant to his brother be set aside on the ground that it was made to cheat, hinder and delay his creditors, including the plaintiff. It was also alleged that defendant was a non-resident of the State. Defendant answered and pleaded that the contract of dissolution was ob-

tained by fraud, and asked a settlement of the partnership affairs, claiming that upon a fair settlement, plaintiff was indebted to him in a large sum. On the final hearing the chancellor adjudged that the contract of dissolution was obtained by fraud. He further held that on a fair settlement of the partnership affairs defendant was indebted to plaintiff in the sum of $84.83, and gave judgment for this amount. He further adjudged that the deed executed by the defendant to his brother was voluntary and without consideration, and was made with the attempt to cheat, hinder and delay his creditors. It was further adjudged that the deed be set aside, and that plaintiff be adjudged a lien on the property so conveyed under and by virtue of an attachment theretofore procured. From that judgment plaintiff appeals.

According to the proof of plaintiff, he and the defendant figured on the assets and liabilities of the firm at the time the contract of dissolution was entered into. He estimated the profits to be about $1,200, with a probable loss of about $600 on account of short weights, depreciation in prices, etc., of hay and grain that had been sold or consigned. At the same time defendant made an estimate which varied a little from that made by plaintiff. No representations were made by plaintiff that were not true. The cash on hand turned out to be greater than that stated in his memorandum, while some of the liabilities turned out to be less. He and defendant both discussed the probable loss on the hay and grain that had been sold or consigned, and agreed that it would be in the neighborhood of $600. At that time he did not know that there would be any loss on the hay and grain in excess of what was usual and customary in such cases. The defendant not only purchased the hay and other provender, but was frequently in the office and had full access to the books. The books were very simple, and could be easily understood by anyone. In these statements plaintiff is corroborated by his bookkeeper, who was present when the transaction was closed. On the other hand the evidence for the defendant is to the effect that he knew nothing about the bookkeeping or financial part of the firm. He attended only to the purchase and shipping of the provender. He had never been informed that any of the drafts which had been drawn for goods sold or consigned had been returned unpaid. He simply trusted to the representations made by plaintiff to the effect that there would be a

probable loss in the neighborhood of $600. Certain officers of the banks where they did business testified that many of the drafts drawn on goods sold or consigned were returned unpaid, and had been returned at the time of the dissolution. When returned, this fact was communicated either to plaintiff or to their bookkeeper. At the time the contract of dissolution was entered into, they knew that the firm would sustain a great loss. The loss sustained by the firm amounted to about $5,000.

After careful consideration of the evidence, we conclude that it is insufficient to establish the charge of fraud. There is an utter failure to show that plaintiff made any representations which did not accord with the facts. So far as the provender on hand that had not been sold or consigned, and the other assets of the firm, were concerned, it appears that the estimates made by plaintiff were in excess of the actual amount. The defendant had full access to the books of the partnership, and the books were of a very simple character, consisting of but few transactions. The defendant was in no way prevented by the plaintiff from consulting the books, and his deposition shows that he is a business man of large experience not only in the hay and grain business, but in other business. Furthermore, he was acquainted with the quality of the provender that had been bought and sold, as well as the amount thereof, and if of an inferior quality, or the weights were short, he probably knew more about this than plaintiff. It is apparent that the probable losses on the provender that had been sold or consigned were fully considered by plaintiff and defendant, and the amount of the losses estimated, and that the losses which actually took place were far in excess of what either partner anticipated at the time. While defendant failed to prove that the contract was obtained by fraud, yet the facts alleged in the pleadings and developed by the proof leave no doubt that the probable losses, which were in the neighborhood of $5,000, were so much larger than either party contemplated at the time, that the contract itself was clearly a result of mutual mistake on the part of plaintiff and defendant. Taking into consideration the relation of the parties, the circumstances attending the dissolution and the mutual mistake under which the contract was executed, we conclude that the contract should not be enforced.

Defendant contends that the chancellor erred to his prejudice in not finding a large sum due him in a fair

settlement of the partnership affairs. There being no cross appeal, we cannot consider this phase of the question.

Judgment affirmed.