## Rankin v. Kelly.

(Decided March 10, 1915.)

### Appeal from Estill Circuit Court.

1. **Partnership—Obligation of Good Faith—Extent.**—Partners are required to exercise the highest degree of good faith towards each other not only during the life of the partnership, but in their settlements and dealings while negotiating for the formation of the partnership, as well as for the purchase or sale of a partner's share in the business, and a violation of this obligation of good faith will avoid a sale of a partner's interest to his co-partner, without a showing of actual fraud or misrepresentation.

2. **Partnership—Purchase of Co-partner's Interest—Fraud—Mistake.**—Where a partner who had the actual management of a mercantile business sold his interest to his co-partner, who knew but little about the business, and represented to him that the value of the accounts due the firm was $1,000, when their actual value was $800.99, and that the liabilities of the firm were $800, when as a matter of fact they amounted to $1,933.88, and the books of the firm did not show the outstanding liabilities, held, that the facts made out a case of fraudulent representation or concealment on the part of the selling partner, or of mutual mistake, and that the sale should be avoided.

RIDDELL & FRIEND for appellant.

R. W. SMITH for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Elby Rankin and G. B. Kelly were partners in a merchandise store at Pryse, Kentucky. In the month of October, 1912, Kelly sold his half interest in the partnership property to Rankin. Rankin was to assume all liabilities, and execute to Kelly his note for $700. Rankin refused to execute the note, and this action was brought to recover the purchase price. Rankin defended on the

ground that Kelly misrepresented the amount of solvent accounts due the firm and the amount of outstanding liabilities. Judgment was rendered in favor of Kelly, and Rankin appeals.

Rankin testifies that he and Kelly were partners. Kelly did most of the buying and selling. Rankin only staid at the store now and then. Kelly kept the books. Before the sale was made Kelly represented that the firm's indebtedness amounted to only about $800; that the outstanding solvent accounts due the firm amounted to about $1,000; that these could all be collected in a few days. When he received the books from Kelly they showed that accounts amounting to $1,000.18 were due the firm. He made an effort to collect these, but collected only about $800. The outstanding indebtedness amounted to over $1,900. The stock of goods was worth about $1,200 or $1,400. On cross-examination Rankin stated that he first proposed the sale. He made Kelly an offer to give or take $700, on the condition, however, that the liabilities did not exceed $800. The proposition was talked over on Sunday, and he told Kelly to wait until Monday for an answer. On Tuesday he concluded he would not trade. On Wednesday he agreed to the trade provided the liabilities amounted to only what were clearly represented. He took possession of the store on Wednesday, and has had possession ever since. The accounts due from customers were all on the books, but the books did not show the amount of liabilities. The bills from parties from whom they purchased were kept in the spool case. On October 11th he wrote to the Lexington Dry Goods Company advising them that he would settle all accounts against the firm. Robert Rankin says that he talked with Kelly a few days before the sale, and Kelly told him they owed something near $800. George Kinkead testified that he had made an effort to collect the outstanding accounts, but succeeded in collecting only about $800.

Kelly testifies that Rankin came to him on Sunday and said he had a proposition to make. He would either take $700 for his interest or give that amount for Kelly's interest, and assume all accounts against the firm. Kelly told Rankin to come down on Monday. On Wednesday Rankin said he did not see his way out. Witness told him that he had made the trade and that Rankin then said he would stick to the trade if he went broke.

Never made any representations to Rankin that all the firm owed outside customers was $800, nor did he guarantee the collection of accounts. Only told him that the accounts that had to be paid at that time amounted to $800. On Wednesday Rankin complained that the accounts were more than he thought they were. At Rankin's request he wrote to some of the wholesale people to send them their accounts. After that time Rankin never made any complaint of the sale. On cross-examination he admitted that Rankin's presence in the store was only occasional. The bills of outside customers were kept in the spool case. The books did not show all their accounts. He did tell Rankin that about $800 in bills were due and that they would have to be paid. At the time of the sale there were about $1,400 worth of goods in the store. All the talk in regard to the amount of the accounts was had after the sale was made.

There is no relation of trust or confidence known to the law that requires of the parties a higher degree of good faith than that of a partnership. This obligation of partners to exercise the utmost good faith towards each other applies not only during the life of the partnership, but extends to their settlements and dealings while negotiating for the formation of the partnership, as well as for the purchase or sale of a partner's share in the business. 30 Cyc., 438. Purchases by one partner of his co-partner's interest in the firm are of frequent occurrence, and when made in good faith operate to vest the ownership of firm property in the purchasing partner. 30 Cyc., 456; Taylor v. Ford, 131 Cal., 440, 63 Pac., 770. Where, however, through mutual mistake, the amount of liability assumed by the outstanding partner is largely in excess of the estimated amount, the sale may be avoided. Mussetter v. Timmerman, 11 Colo., 201, 17 Pac., 501; Maxfield v. Seabury, 75 Minn., 93, 77 N. W., 555; Erhmann v. Stitzel, 121 Ky., 751. The transaction may also be avoided not only for actual fraud, but for a violation of that high degree of good faith and fair dealing which the law requires of the partners in their transactions with each other. Meyers v. Merillion, 118 Cal., 352, 50 Pac., 662; Powell v. Cash, 54 N. J. Eq., 218, 34 Atl., 131, affirmed in 55 N. J. Eq., 826. 41 Atl., 1115; Butler v. Prentiss, 158 N. Y., 49. It is, therefore, held that where one party seeks to benefit himself at the expense of the firm or of his co-partner,

he will be required to show not only that the law is on his side, but that his conduct conforms to the high standard of honor required by the partnership relation. To secure an avoidance, therefore, misrepresentation by the benefited partner is not necessary. Where one of the partners, having the active control of the business, secures an advantage by means of concealment, the purchase will be held void. Brooks v. Martin, 69 U. S. (2 Wall.), 70, 17 L. Ed., 732; Pomeroy's Eq., Jur., Secs. 891-902; Lee's Admr. v. Reed, 4 Dana, 109. In the present case Kelly was the active manager of the business. Rankin knew but little about it. The books did not show the outstanding liabilities. Rankin claims that Kelly represented the liabilities of the firm as amounting to only $800. Kelly claims that he represented that this amount was all that had to be paid at that time, and that no conversation with reference to the amount of outstanding liabilities took place until after the sale was effected. Kelly does not say that he did not know the amount of outstanding liabilities. Having made the purchases himself, he was certainly in a position to know. If he did know, good faith required that he disclose the amount to Rankin. If he did not know, the facts certainly make out a case of mutual mistake. Taylor v. Wrather, 155 Ky., 25. It is doubtful if the merchandise exceeded $1,200 or $1,400 in value. The book value of the accounts due the firm amounted to $1,000. Their actual value was $800.99. The actual assets did not exceed $2,000 or $2,200. Opposed to this sum were liabilities amounting to $1,933.88, or an excess of assets over liabilities, looking at the matter in the most favorable light, of only $66.12 or $266.12. From the standpoint of actual assets, Kelly's interest was worth only from $33.06 to $133.06. He was paid $700 for his interest. It was hardly probable that if Rankin had known the facts he would have made such a trade. Whether the case be regarded as one of fraudulent representation or concealment, or of mutual mistake, we conclude that the sale should not stand. It follows that the judgment in favor of Kelly is erroneous.

Judgment reversed and cause remanded, with directions to enter such judgment as may be necessary to place the parties in the position which they occupied prior to the sale.