## Hollowell v. Satterfield.

(Decided October 17, 1919.)

### Appeal from Caldwell Circuit Court.

1.  Equity—Jurisdiction—Trusts.—Where the purpose of a suit is to enforce a constructive trust, equity has jurisdiction to hear and determine the whole matter.

2.  Partnership—Duties of Partners.—The obligation of partners to observe good faith towards each other is not confined to persons who are actually engaged in conducting a partnership, but extends to persons negotiating for a partnership and to persons who have dissolved partnership, but who have not completely wound up and settled the partnership affairs.

3.  Partnership—Duties of Partners—Trusts.—Plaintiff and defendant were partners in a mining lease, which provided for a forfeiture if the annual rental was not paid on January 15th of each year. It was the duty of defendant to pay the rental. Defendant claimed that he and plaintiff agreed in the month of January, 1916, to discontinue the lease if they did not dispose of it. They did dispose of it to another, who forfeited by non-payment, but plaintiff was not notified of this fact. Plaintiff attempted to discuss the matter with defendant, but defendant put him off, saying that there was plenty of time. Without further discussion of the matter, defendant failed to pay the rent due on January 15, 1917. Two days later plaintiff notified defendant that he desired to continue the lease, and asked defendant to make the payment. Instead of seeing whether the lessor would accept the rent, defendant, within five or ten days, entered into an arrangement with the lessor by which the lessor agreed to execute a new lease to the defendant individually. On February 1, 1917, the new lease was executed upon practically the same terms and conditions as the partnership lease. Held, that the mere termination of the lease did not end the partnership, which continued for the purpose of winding up the partnership affairs, and as defendant took the new lease in his own name with

knowledge that plaintiff desired to continue the lease, defendant held the new lease in trust for the firm.

R. W. LISANBY, B. C. ORANGE and A. C. MOORE for appellant.

C. S. NUNN, JOHN W. BLUE and JOHN C. GATES for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

For many years R. N. Tyrie has been the owner of a farm near Princeton, containing a deposit of fluorspar. In the year 1901, he leased the mineral rights to C. C. Larkin, F. T. Satterfield and John W. Hollowell for a period of ninety-nine years. In addition to certain royalties, the lease provided for the payment of an annual rental of $50.00 on or before the tenth day of January in each year, and for a forfeiture of the lease in case of non-payment on or before that time.

The lease was continued in effect until the year 1911, when Larkin left the state and surrendered his interest. A new lease was then executed to Satterfield and Hollowell, containing the same terms and conditions as the prior lease, with the exception that the rental was payable on or before January 15th in each year. The annual rental was regularly paid up to and including that due January 15, 1916. About the first of December of that year, the lessees sublet the property to a man by the name of Conger, by a lease providing for the payment of the annual rental on January 10th of each year. Conger worked for a while, but did not make the $50.00 payment due on January 10th, nor did Satterfield and Hollowell make the payment to Tyrie due on January 15th. Within five or ten days thereafter, Hollowell arranged with Tyrie for the execution to him individually of a new lease, upon practically the same terms and conditions. This lease was formally executed on January 30, 1917. Some time in December, Hollowell had met J. R. Frazier, who agreed to inspect the property. He looked at the property about January 1st, and stated that he would return and talk the matter over. On February 15th, Hollowell sublet the property to Frazier with an option to purchase the lease for $25,000.00. In the month of May, 1917, Satterfield learned that Hollowell had taken a new lease in his own name and was then developing the property.

Charging that he and Hollowell were partners, and that Hollowell was guilty of bad faith in permitting the old lease to be forfeited and in securing a new lease in his own name, Satterfield brought this suit against Hollowell for the purpose of being adjudged a half owner of the new lease, and for all proper and equitable relief. On final hearing, plaintiff was granted the relief prayed for and defendant appeals.

According to plaintiff, the annual rental of $50.00 was paid to Tyrie by depositing that sum to his credit in bank. The payments were always made by Hollowell and plaintiff would settle with Hollowell, sometimes before and sometimes after the fifteenth day of January. Plaintiff had at least three conversations with Hollowell in reference to the renewal of the lease. During the last conversation, which occurred in January, 1917, he told Hollowell that it was about time to pay on the Tyrie lease, and offered to give him a check. Hollowell replied that it was not necessary to give a check that day, as there was plenty of time. Plaintiff had a further conversation with Hollowell on the night of January 17th. In that conversation he asked Hollowell if he had paid Tyrie.

Hollowell replied that he had not paid and that the lease had run out. Plaintiff then asked Hollowell to go to bank in the morning and deposit a check to Tyrie's credit.

Hollowell replied that he would think the matter over and plaintiff said, "All right." At no time did Hollowell notify plaintiff that he was going to let the lease lapse.

According to Hollowell and Tyrie, plaintiff tried in the month of January, 1916, to induce Tyrie to lower the rental or take a one-third interest in the lease, saying that if Tyrie did not do so plaintiff would stop payment. Hollowell says that, after this conversation, he and plaintiff agreed to pay for the year 1916, with the understanding that if they did not dispose of the property they would not continue the lease for the following year. Though they did sublet the property to Conger, Conger did not pay the rental due on January 10th, and therefore abandoned the lease. However, Hollowell did not notify plaintiff of this fact. Hollowell also denies that he had any conversation with plaintiff about renewing the lease. He admits, however, that he had a conversation with him in January, in which plaintiff offered to discuss

the Tyrie business, but Hollowell declined to do so on the ground that he was busy and there was plenty of time. After that he never discussed the matter with plaintiff. Plaintiff did call him over the 'phone on the evening of January 17th, and suggested that the money be deposited to Tyrie's credit, but Hollowell declined to do so. He then knew that plaintiff wanted to keep the lease alive. Though it was customary for him to deposit the rental to Tyrie's account, there was no regular agreement to that effect, but each particular payment was agreed on in advance. He admitted that he did not care to continue with plaintiff as a partner because plaintiff took no interest in the matter and was inclined to throw all the responsibility on him. While he had no agreement with Tyrie to give him a new lease before the expiration of the old lease, he felt that Tyrie was a good friend of his, and would treat him right in case he wanted to make a deal with Tyrie. When the rental was not paid on January 15th, he considered the lease forfeited, and thought that he was free to obtain a new lease.

It is first insisted that plaintiff should have been denied relief in a court of equity because his petition showed that he had an adequate remedy at law. This contention is without merit. The object of the suit was to have it adjudged that defendant held the new lease in trust for the partnership, and to require him to convey a half interest therein to plaintiff. In other words, the suit was to enforce a constructive trust, and this was sufficient to confer jurisdiction on a court of equity to hear and determine the whole matter. Oelrichs v. Spain, 15 Wall. 211, 21 U. S. L. Ed. 43.

With respect to the main issue, it is the insistence of plaintiff that a partner cannot deprive his co-partner of an interest in the lease by permitting it to be forfeited, and then obtaining a new lease in his own name. On the other hand, defendant contends that this is a case where one partnership deal was closed, and that defendant did not owe to plaintiff the duty of inviting him into a new partnership. The principles of law applicable to a case of this kind are well settled. In the first place, there is no relation of trust or confidence known to the law that requires of the parties a higher degree of good faith than that of a partnership. Nothing less than absolute fairness will suffice. Each partner is the confidential agent

of the other, and each has a right to know all that the other knows. Neither will be permitted to benefit himself at the expense of the firm. The obligation of good faith is not confined to persons who are actually engaged in conducting a partnership. It extends to persons negotiating for a partnership, and to persons who have dissolved partnership, but who have not completely wound up and settled the partnership affairs. Axton v. Ky. Bottlers Supply Co., 159 Ky. 51, 166 S. W. 776; Ann. Cases, 1915D 74; Rankin v. Kelly, 163 Ky. 463, 173 S. W. 1151.

Following these rules, it has been often held that when a member of a partnership, upon the expiration of a lease to the firm, renews it in his own name, it inures to the benefit of the firm. Clegg v. Edmonson, 8 De G. M. & G. 787; 26 L. J. Ch. N. S. 673, 3 Jur. N. S. 299; Clegg v. Fishwick, 1 Macn. & G. 294, 1 Hall & Tw. 396, 19 L. J. Ch. N. S. 49, 13 Jur. 993; Featherstonhaugh v. Fenwick, 17 Ves. Jr. 298, 11 Revised Rep. 77; Alder v. Fouracre, 3 Swanst 489, 19 Revised Rep. 256; Clements v. Hall, 2 De G. & J. 173, 27 L. J. Ch. N. S. 349, 4 Jur. N. S. 494, 6 Week. Rep. 358, reversing 24 Beav. 333; Hawkins v. Hawkins, 4 Jur. N. S. 1044. In Knapp v. Reed (Neb.) 130 N. W. 430, 32 L. R. A. (N. S.) 869, it was held that when a partnership is carrying on a business in premises which it holds under a lease, neither partner can, without the consent of the other, take a renewal of the lease in his own name and so exclude the other partner. In Mitchell v. Reed, 61 N. Y. 123, 19 Am. Rep. 252, it was held that one member of a co-partnership cannot during its existence, without the knowledge of his co-partner, take a renewal lease for his own benefit of premises leased by the firm, although the term of the renewal lease does not begin until after the co-partnership had expired by its own limitation.

Examining the facts of this case in the light of these principles, what do we find? Merely the contention that Hollowell had a right to secure the new lease because a year before he and plaintiff had agreed that if the property was not disposed of, they would not continue the lease. As a matter of fact, however, the property was disposed of to Conger, and though it be true that Conger failed to pay the rental due on January 10th and thereby forfeited the lease, plaintiff was never notified of this fact. And even if it be conceded that plaintiff was mis-

taken in saying that he had offered the check for the rental due in January, 1917, defendant admits that plaintiff offered to talk to him about the lease, and that he told plaintiff there was plenty of time. Indeed, we are not convinced that Hollowell believed that plaintiff wanted to terminate the lease. His conduct and his admissions show that he wanted to get rid of plaintiff. That he was the one charged with the duty of making the deposit to Tyrie's credit, there can be no doubt. His chief objection to plaintiff as a partner was based on the fact that plaintiff took no interest in the matter and put all the responsibility on him. After telling plaintiff that there was plenty of time to discuss the matter, he, without notifying plaintiff that Conger had defaulted in the payment due on January 10th, or again calling plaintiff's attention to the matter, failed to make the payment due on January 15th. But the matter did not stop there. He admits that he learned from plaintiff on January 17th that plaintiff wished to continue the lease. The mere termination of the lease did not end the partnership. The partnership certainly continued for the purpose of winding up the partnership affairs. With knowledge that his partner desired to continue the lease, defendant took the new lease in his own name. Under these circumstances, the chancellor did not err in adjudging that defendant held the new lease in trust for the firm, and in requiring him to convey a half interest therein to plaintiff.

Judgment affirmed.