**VAN HOOSER et al. v. KEENON et al.**

Court of Appeals of Kentucky.

June 11, 1954.

Rehearing Denied Oct. 15, 1954.

Harbison, Kessinger, Lisle & Bush, Lexington, for appellants.

Stoll, Keeno & Park and John L. Davis, Lexington, for appellees.

STEWART, Justice.

This appeal is from a judgment of the Fayette Circuit Court awarding $9,375 to plaintiffs, R. W. Keenon and his wife, Eloise Keenon, this amount representing one-fourth of the sum of $37,500 paid to James D. Van Hooser and Harold J. Utter, and to three other stockholders, all defendants below, for an option to purchase 60% of the stock of Western Kentucky Stages, a small bus line operating in Kentucky and Tennessee. The Keenons own 25% of the total stock in the bus line; defendants hold 63% thereof. We shall hereinafter refer to the parties as "plaintiffs" and "defendants," and to Western Kentucky Stages as "Western." The essential facts out of which this litigation arose are not in dispute.

Plaintiffs, R. W. Keenon and Eloise Keenon, and defendants, Harold J. Utter and James D. Van Hooser, and three others who are not parties to this appeal, in November of 1945, acquired a bus line, together with the necessary equipment and facilities, which was to be and thereafter was operated by them under the name of Western Kentucky Stages. After the purchase, a partnership agreement was entered into which, so far as pertinent to this case, provided that no partner should have the right to sell his or her interest in the partnership without the consent of the other partners and without first giving those partners an opportunity to buy such interest. The bus line existed as a partnership from 1946 until the latter part of 1947 or the early part of 1948.

The interests of plaintiffs in the partnership were never held by them but were retained by defendant, Harold J. Utter, as their trustee. The reason for this arrangement was that at the time of the acquisition of Western in 1945 by the above persons plaintiff, R. W. Keenon, had for a number of years been closely connected with Western's large competitor, Southeastern Greyhound Lines, as the latter's chief counsel, and, when application was made to the Interstate Commerce Commission for ratification of the purchase of Western by plaintiffs and defendants below, the Commission required as a condition of its approval that the interests of plaintiffs should not be in their names or under their control. Accordingly, in conformity with the Commission's ruling the interests of the Keenons in the partnership were vested by written agreements for their benefit in defendant, Harold J. Utter.

During September, 1947, while defendants, James D. Van Hooser and Harold J. Utter, were in Chicago they were approached by the president of Greyhound, Inc., one of the large bus transportation systems of this country, and questioned concerning the possibility of the larger corporation purchasing control of Western. The reaction of the two defendants to this suggestion was favorable and, after some negotiations between them and Greyhound, Inc., the latter offered on October 15, 1947, to pay $37,500 for an option to buy 60% of Western's stock in the event Western would alter its status from a partnership to that of a corporation. On October 24, 1947, a contract was executed by Greyhound, Inc., on the one hand and the five defendants below on the other, whereby it was agreed to give this larger bus line an option to purchase 60% of the stock of Western when the latter became a corporation. This entire 60% was to be purchased from these five persons who would own an aggregate of 63% of Western's stock. The contract stipulated that these same persons would "use their best efforts to incorporate" Western. The sum of $37,500 was to be applied toward the purchase price but was to be retained by these persons upon the refusal or failure by Greyhound, Inc., to exercise its option.

Subsequently, in October, 1947, defendants on this appeal sought out plaintiffs and requested that the partnership be changed to a corporation and that the stock be issued to the partners in proportion to

their interests in the partnership. Two reasons were advanced by these defendants for the change. First, they asserted they desired to be relieved of the personal liability imposed by the partnership setup and, secondly, they contended they were having difficulty in persuading the Federal Revenue Department to permit Jennie W. Van Hooser, wife of James D. Van Hooser, and Dagne Utter, wife of Harold J. Utter, to claim as partners their proportionate share of the income from Western. Plaintiffs testified they opposed substituting the partnership for a corporation for some time but they finally yielded to the plan only upon the condition that these five persons who would own 63% of the outstanding stock in the corporation would agree they would not sell their stock without also obtaining for plaintiffs the right to sell their interest in the corporation on the same terms and conditions. This proposal was then adopted, the corporation was organized and the foregoing provision was embraced in an agreement which was drawn up and signed by these parties.

After the partnership became a corporation, the option money that had been paid to defendants on this appeal was later forfeited by the refusal of Greyhound, Inc., to complete its deal and the $37,500 was divided among the five defendants below. Plaintiff, R. W. Keenon, received information through his employer, Southeastern Greyhound Lines, that some sort of transaction had taken place between defendants and Greyhound, Inc. He attempted to induce defendants, James D. Van Hooser and Harold J. Utter, to disclose the nature of this transaction, but this they refused to do. Still later, having since learned the details of the undertaking between Greyhound, Inc., and the five persons involved, Keenon appeared at a meeting of Western's stockholders and introduced a resolution to the effect that the entire $37,500 representing the option money forfeited to these persons should be paid into the treasury of the corporation for the benefit of all stockholders. The resolution failed for want of a second. The Keenons then instituted suit, claiming 25% of the sum in question.

Defendants on this appeal took the position in circuit court and take the same stand here that the option agreement was not a dealing with any property belonging to either plaintiff, but the sale, had it been effected, would have only included the 60% interest of the five defendants below in the bus line, and it is argued plaintiffs are claiming a share in a result they did nothing to produce. These defendants admit that knowledge of the contract between the five Western partners and Greyhound, Inc., was purposely withheld from plaintiff, R. W. Keenon, because it is insisted he would have caused Southeastern Greyhound Lines to use its powerful influence to frustrate the optioners' plan.

Upon submitting their cause to the lower court, plaintiffs first contended defendants as their copartners wilfully made false representations to them as to the true reason for their desire to change the partnership to a corporation and that as a consequence of these alleged fraudulent acts plaintiffs were induced to consent to incorporation with the result that defendants were enabled to collect $37,500 in option money from Greyhound, Inc. Secondly, plaintiffs insist that defendant, Harold J. Utter, held their interests in the business in trust for them and that he also individually owned a portion of Western, so that as their trustee, he violated the duty imposed upon him by law when he gave an option on his own individual interest at a considerable profit to himself and deliberately failed and refused to include the interests of these plaintiffs in the option agreement. Thirdly, plaintiffs maintain that, irrespective of any fraud practiced upon them by the appealing defendants or the breach of a duty owed them by defendant, Harold J. Utter, as their trustee, they are as partners legally entitled to share proportionately with defendants the option payment which was obtained by the latter by virtue of the partnership relationship and which, in reality, belongs to the partnership.

The case was referred to the master commissioner of the Fayette Circuit Court who sustained plaintiffs' third ground for relief, reserving consideration of the other

two grounds. He found that when Greyhound, Inc., paid $37,500 for an option to purchase a 60% interest in the partnership this included 60% of every partner's interest therein and that the money paid for the option inured to the benefit of all the members of the partnership in proportion to their ownership. The commissioner also was of the opinion that the intent of defendants in urging plaintiffs to agree to convert Western from a partnership into a corporation was to provide a vehicle by means of which all the partners, excluding plaintiffs, could transfer their interests to Greyhound, Inc., and that, in event the transfer should be effectuated, plaintiffs were to be left to their fate as minority stockholders. This finding of the commissioner was approved by the circuit judge and he rendered judgment solely against defendants, James D. Van Hooser and Harold J. Utter, for the 25% due plaintiffs on the theory that these two persons were the active agents in initiating and negotiating the option agreement, that they collected and disbursed the gains therefrom, and that they should therefore be treated as trustees for the partnership and be compelled to account to the partners proportionately for the money received from the transaction, even though they had subsequently paid the three defendants below their share of the proceeds. These two defendants have appealed from this judgment.

We should state, at the outset, that there is no relation of trust or confidence known to the law that requires of the parties a higher degree of good faith than that of a partnership. Nothing less than absolute fairness will suffice. Each partner is the confidential agent of all the others and each has a right to know all that the others know. Nor will one partner be permitted to benefit at the expense of the firm. See Hollowell v. Satterfield, 185 Ky. 397, 215 S.W. 63. In Axton v. Kentucky Bottlers' Supply Co., 159 Ky. 51, 166 S.W. 776, 778, we had this to say on the subject: "* * * The obligation of good faith is not even confined to persons who are actually partners. It extends to

persons negotiating for a partnership, and to persons who have dissolved partnership, and have not completely wound up and settled the partnership affairs. * * *" In Stephens v. Stephens, 298 Ky. 638, 183 S.W.2d 822, 824, we held: "* * * No undue advantage of one over another by misrepresentation or concealment will receive the approval of the law. A court of equity will always grant relief to the partner who has suffered from a breach of the obligation. One partner will not be permitted to obtain secretly any right that should belong to the partnership and put it to his own individual profit. Of such character is the securing of a contract. The criterion is not an actual evil motive, for the courts look to the results of any such action regardless of evil intent. If such action results in profit or advantage, the courts will require an accounting. * * *"

Applying the foregoing basic rules of the common law to the admitted facts of this case, and irrespective of fraud, as it relates to the acts of the appealing defendants in transforming the partnership into a corporation, or regardless of any violation of duty upon the part of defendant, Harold J. Utter, as trustee for plaintiffs, we conclude as did the lower court, and the evidence abundantly supports our conclusion, that the five defendants were and are under a legal obligation as partners to share proportionately with plaintiffs the option money which was obtained by the optioners by virtue of the partnership relationship. The important factor is that these defendants received money which should have gone into the partnership treasury and then should have been divided proportionately among all of the partners. The excuse advanced by them that they were compelled to keep the Keenons in the dark, in order for their plan to work, certainly furnishes no legal basis under the circumstances for their retention of all the money

Furthermore, we believe it was proper to render judgment against the two appealing defendants alone for the full amount due plaintiffs. They initiated and consummated the option deal with Grey-

hound, Inc., and they collected and divided up among the five optioners the cash benefits from the transaction. When they received the money under the conditions recited they became in effect trustees of this fund for the benefit of the other partners for the share of each one in the proceeds. The mere fact that the five optioners have already apportioned the $37,500 among themselves does not relieve the appealing defendants of their obligation to settle with plaintiffs for their proportionate part. See White v. Jouett, 147 Ky. 197, 144 S.W. 55.

We therefore conclude the lower court correctly disposed of the issues raised.

Wherefore, the judgment is affirmed.