**Charles MONIN, Individually and as a Partner in Monin Bros., Appellant,**

**v.**

**Joseph E. MONIN, Individually and as a Partner in Monin Bros., and Sonny Monin, Inc., Appellees.**

**No. 88–CA–753–MR.**

Court of Appeals of Kentucky.

Oct. 13, 1989.

Discretionary Review Denied by Supreme Court April 18, 1990.

Robert E. Butler, II, John Douglas Hubbard, Fulton, Hubbard & Hubbard, Bardstown, for appellant.

John S. Kelley, Kelley, Heaton & Geoghegan, Bardstown, for appellees.

Before EMBERTON, HOWARD and McDONALD, JJ.

McDONALD, Judge.

This is a partnership case. The parties, Charles Monin and Joseph Monin (a/k/a Sonny), are brothers who formed a partnership in 1967 for the purpose of hauling milk. In 1984 the relationship between Charles and Sonny deteriorated such that Sonny no longer desired to continue the partnership. Some efforts were made to resolve their affairs, to no avail. In July, 1984, Sonny notified Charles of his intention to dissolve the partnership, and the next day wrote to Dairymen Incorporated (DI) to notify them that he was canceling the partnership's contract with DI effective October 16, 1984, the annual renewal date of the hauling contract. Sonny also informed DI he wanted to apply for the right to haul milk for DI after the expiration of the partnership's contract. On September 24, 1984, Charles and Sonny executed an agreement to resolve their business arrangement. The document entitled "Partnership Sales Agreement" provided that

they would hold a private auction between themselves for all the assets of the partnership "including equipment, and milk routes." As the contract with DI required approval of any sale or transfer of the milk hauling agreement, the sales agreement provided that such approval from DI would be sought and the sales agreement would be "null and void" if approval from DI was not forthcoming. The agreement also contained a covenant not to compete. Charles was the successful bidder at the auction, having bid $86,000.

On the same day as the auction, September 27, 1984, DI called a producers meeting at which time those present voted not to approve Charles as their hauler. Instead they voted to have Sonny haul their milk. Sonny accepted the offer and has since hauled milk for DI as Sonny Monin, Inc. As a result Sonny ended up with the major asset of the partnership, the milk hauling contract, at no cost to him.

On February 11, 1985, Charles commenced this action in the Nelson Circuit Court alleging that Sonny violated his fiduciary duty to the partnership and that he had tortiously interfered with the partnership's contractual relations with clients and customers. A bench trial was conducted in December, 1986. In its judgment for Sonny the trial court reasoned as follows:

> When Charles was the high bidder at $86,000.00, the value of the partnership assets, including milk routes, was established as far as Charles was concerned. Sonny had no further say in establishing a value for such assets. When the producers and D.I. rejected Charles as a milk hauler, the value of the partnership assets became adjusted from $86,000.00 to $22,000.00 (the value of the milk hauling equipment).

> When the producers voted for Sonny to haul their milk, they were not voting on a partnership matter. They were voting on Sonny's individual application. Furthermore, they were privileged to vote for some third person to haul their milk.

> In summary, the affairs of the Monin Brothers partnership were finally settled on September 27, 1984. As a result of the actions of that date, the assets of the

partnership were finally valued at $22,000.00. When Charles was rejected as the D.I.'s milk hauler on that date, the partnership had no interest in the milk routes and neither partner had any claim to same as part of their partnership interests.

We conclude the trial court's reasoning is flawed in that it ignores Sonny's duties to the partnership with respect to the most valuable asset of that entity, the milk hauling contract. As stated in *Van Hooser v. Keenon*, Ky., 271 S.W.2d 270, 273 (1954), "[T]here is no relation of trust or confidence known to the law that requires of the parties a higher degree of good faith than that of a partnership. *Nothing less than absolute fairness* will suffice." (emphasis added.) Importantly, that decision holds that a partner's fiduciary duties extend beyond the partnership "to persons who have dissolved partnership, and have not completely wound up and settled the partnership affairs." Sonny's continuing duty was especially applicable here as he agreed to sell his interest to Charles so Charles could continue the partnership business. *See* 59A Am.Jur.2d *Partnership* § 431 (2nd Ed.1987). Nothing in the Uniform Partnership Act (KRS Chapter 362) changes the high degree of good faith partners must maintain in their relations with one another. *See Marsh v. Gentry*, Ky., 642 S.W.2d 574 (1982).

Thus, when Sonny failed to withdraw his application with D.I. for the milk routes after agreeing to allow Charles to buy his interest in those routes and continue the partnership business, Sonny obviously breached his duties to the partnership. As the court found, the value of the partnership assets dropped from $86,000 to $22,000 when Sonny was awarded the contract by D.I. While it is possible D.I. would not have awarded the contract to Charles even if Sonny had withdrawn his name from contention, there is no evidence that any other person or entity was available or willing to take over the route. The law is clear that one partner cannot benefit at the expense of the partnership. *Van Hooser, supra.* Sonny, by agreeing to sell

his share of the assets to Charles *and* by actively pursuing those same assets from D.I., positioned himself such that whatever D.I. did, he could not lose. Understandably, Charles believes he was abused by the obvious conflict of interest. Thus, the trial court's dismissal of Charles's breach of fiduciary duty claim is reversed and remanded for entry of judgment in favor of Charles. We do not believe a new trial on damages is required; nor do we believe Charles is entitled to an accounting from Sonny for profits made since 1984. The value of the asset at issue was determined by the parties at or very near the time of Sonny's breach of duty to the partnership ($86,000 minus $22,000, or $64,000), and that should form the measure of damages to which Charles is entitled.

Finally, the trial court's findings concerning the tortious interference with contractual relations are supported by substantial evidence and will not be disturbed. CR 52.01. The evidence of Sonny's behind-the-back efforts to convince producers not to work with or accept Charles as their hauler was conflicting, and the trial court, as fact finder, could believe Sonny's version of the facts on that claim.

Accordingly, the judgment of the Nelson Circuit Court is reversed and remanded for entry of a new judgment consistent with this opinion.

HOWARD, J., concurs.

EMBERTON, J., dissents.

EMBERTON, Judge, dissenting.

I respectfully dissent.

I cannot agree with the majority that Sonny's actions constitute a breach of his fiduciary obligation to Charles. Evidence indicates that numerous efforts toward resolution of the problem—which efforts appeared to be made in good faith by Sonny—were summarily rebuffed by Charles. There is no evidence but that both parties were genuinely bidding at the September 27 private auction. Both understood that the successful bidder won equipment, the routes and the other assets only if DI approved the *new* contract.

Upon polling the affected producers, only 1 out of 12 indicated a preference for Charles. In fact, evidence was strong that most of the producers would not allow Charles to haul their milk; that the DI field representative stated DI could not work with Charles; and, that drivers stated they would quit before driving for Charles. The trial court, having heard the evidence, found that none of such positions taken by DI, or by the producers, were the result of actions taken (or statements made) by Sonny. DI, having such information, made a decision in its own best interest—not as a result of influence from Sonny.

I find nothing in the record to support a reversal of the trial court's decision. I would affirm.