## Williamson, Appellant, *v.* Dawson.

*Equity—Accounting for profits—Purchase of coal lands—Joint owners—One party buying out the other—Signature to paper— Modification of paper—Notice—Trust and trustees—Constructive trust—Trustee ex maleficio.*

1. Where two persons join together in the purchase of coal lands, and the first sells out his interest to the second, and thereafter the latter sells the whole estate in the lands at a profit to a person who had been previously negotiating for them at a price named, but had postponed acceptance, the second cannot compel

his associate to account for half the profits, if it appears that he knew of the pending negotiations, and there is no evidence that, at the time he sold out, an agreement of sale had been made with the final purchaser.

2. Where, in an equity suit, it appears that plaintiff and defendant were about to enter into an agreement, and that defendant refused to sign a paper unless a change of a word was made therein, and thereupon caused the word to be changed in plaintiff's presence, and plaintiff subsequently caused the paper to be written in its original form, and plaintiff then signed it without being aware that a change had been made, plaintiff was bound to call the attention of defendant to the fact that he had presented a redrawn copy of the agreement in its original form, and, failing to do so, he could not ask a court of equity to assist him in taking advantage of defendant's mistake.

Argued October 24, 1921.   Appeal, No. 182, Oct. T., 1921, by plaintiff, from decree of C. P. Washington Co., No. 2768, in Equity, dismissing bill in equity, in case of T. D. Williamson v. George W. Dawson, now by order of substitution Mayme M. Dawson, administratrix of George W. Dawson, deceased.   Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Bill in equity for accounting of profits.   Before MC-ILVAINE, P. J.

The opinion of the Supreme Court states the facts.
Bill dismissed.   Plaintiff appealed.

*Error assigned*, inter alia, was decree, quoting it.

*Sidney J. Watts*, with him *A. T. Morgan*, for appellant.—As joint adventurers the parties stood in a confidential and fiduciary relation to each other, and, in negotiating for the interest of the other, each was obliged, not only to refrain from active fraud, but to inform the other of all facts necessary to enable the other to form a sound judgment of the value of his interest in the joint property: Matthews v. Bliss, 22 Pick. 48; Mc-

Cutcheon v. Smith, 173 Pa. 101; Brooks v. Martin, 69 U. S. 70.

The parties to this case were engaged in a joint adventure and their rights and liabilities are to be governed by the law applying to that relationship, rather than by the law applying to tenants in common: Wright v. Cumpsty, 41 Pa. 102; McCutcheon v. Smith, 173 Pa. 101.

*Rufus S. Marriner,* of *Wiley, Marriner & Wiley,* for appellee: The cases cited do not apply to this case.

OPINION BY MR. JUSTICE FRAZER, January 3, 1922:

This proceeding in equity was begun for the purpose of compelling defendant to account to plaintiff for a share of the profit derived from the sale of coal property, located near Millsboro, Fayette County, which plaintiff and defendant bought together, each supplying one-half the consideration, plaintiff, previous to the sale, having conveyed to defendant his undivided half interest in the property. Plaintiff claimed a share in the profits of the sale, alleging in support of his claim that defendant concealed from him the fact that negotiations for the sale were pending previous to and at the time of the conveyance of plaintiff's interest to defendant. The bill asked that defendant be declared trustee of a mortgage, forming part of the consideration for the property, and that the court fix the exact amount of plaintiff's interest in the security. The court below dismissed the bill on the ground that plaintiff failed to prove facts necessary to create a constructive trust, or make defendant a trustee ex maleficio of the one-half interest in the land. Plaintiff appealed.

It appears from the findings of the court below, which are amply supported by the testimony, that plaintiff and defendant had for some time conducted negotiations with various persons for the sale of the property, among them Robert L. James, of the City of Pittsburgh, who

expressed his willingness to purchase the entire property for the sum of $36,000, saying, however, he was unable to do so until further developments were made in other mining properties he at the time owned. Plaintiff had knowledge of these negotiations and of the proposition made by James. In the meantime, and before James signified his intention to become the purchaser, a difference arose between plaintiff and defendant and, at a conference between them on February 2, 1920, defendant, on plaintiff's request for a proposition, stated he would give or take $10,000, with accrued interest and taxes, for a half share in the property, to which plaintiff immediately replied, "You can have my interest on those terms." Defendant accepted plaintiff's offer and a check was drawn and delivered for $500 and a receipt given, stating the payment was on account of the sale of plaintiff's interest in the property to defendant. The parties agreed to complete the transaction on the following day. The principal dispute shown by the testimony is as to what was said concerning a writing set forth in plaintiff's bill, signed by defendant, dated February 17, 1920, and containing the following provisions: "This is to certify that I, George W. Dawson ......have purchased all the undivided one-half interest in [here follows a description of the property and conditions]. The said sale being conditioned upon the representations of George W. Dawson to the said T. D. Williamson that he has not, prior to this date, sold said coal or entered into negotiations, either verbal or written, for the sale of said coal." Plaintiff testified he informed defendant at the first interview on February 2d, that, unless the latter signed a certificate of the character above recited, plaintiff would not sell. Defendant denied such statement was made at that time and said the request was first made the next day at the time fixed for settlement. Defendant then objected to the use of the word "negotiations" saying he considered the term too broad, the fact being that negotiations

had previous to that time been pending for the sale of the property with a number of persons. He, accordingly, suggested the word "negotiations" be changed to "agreement" which was done by plaintiff's stenographer. A tender of the purchase money was made without the certificate and refused by plaintiff. Defendant declined to sign the paper until he had consulted his attorney and left plaintiff's office for that purpose, taking the paper with him. His attorney advised against signing the paper until he had secured a written statement from all parties who had been solicited to buy the property, to the effect that no agreement up to that time had been entered into, which was accordingly done. The parties again met on February 17th to complete the transaction and defendant produced the paper which had been corrected by changing the word "negotiations" to "agreement." In the interim, plaintiff prepared a new copy of the original paper in which he restored the word "negotiations" and laid it on the table with the deed to the premises. Defendant signed the newly prepared certificate without reading it believing it to be his own draft of the paper in which the word "negotiations" had been changed to "agreement," but which subsequently proved to be the rewritten one produced by plaintiff. Defendant's signature was witnessed by his attorney, who was not aware of the existence of the original paper containing the word "negotiations." Defendant having subsequently sold the property to James at the latter's original offer of $36,000, plaintiff claimed a share of the profit realized, alleging that defendant concealed from him the fact that negotiations had been pending with the purchaser.

The testimony shows that James subsequently decided to carry out his original desire to purchase the property at the price named. There is no evidence that an agreement to that effect existed at the time plaintiff sold his interest to defendant. Although negotiations had been pending with James for some time, plaintiff knew of

these efforts to sell to him and was aware that James expressed a desire to purchase the property at a future time at the price named. Plaintiff was, accordingly, not misled as to the existence of these negotiations and is not in a position to claim they were concealed from him. We are clearly of the opinion the court below was fully justified by the evidence in finding defendant signed the certificate believing it to be the one in which he had, in plaintiff's presence, caused the word "negotiations" to be erased and the word "agreement" to be substituted. Knowing this, plaintiff was bound to call the attention of defendant to the fact that he had presented a redrawn copy of the certificate in its original form and, failing to do so, cannot now ask a court of equity to assist him in taking advantage of defendant's mistake.

Under all the circumstances, the court below properly concluded that plaintiff failed to prove the facts necessary to entitle him to an accounting of the proceeds of sale of the property.

The decree of the court below is affirmed at plaintiff's costs.