NOTE—Headnotes Nos. 1, 4, See Pleading, 31 Cyc. 416, 417, 617; (1924 Anno); 2, 6, 8, 9 Appeal and Error, 4 C. J. Secs. 1678, 2309, 2594, 2913; 3, Attachment 6 C. J. Sec. 1135; Pleading 31 Cyc. 407; 5, see Chattel Mortgages, 11 C. J. Secs. 316, 338; Case, action on, 11 C. J. Sec. 21; Liens 25 Cyc. 681; 7, see Attachment, 6 C. J. Secs. 1146, 1147.

---

## FRIED ET UX v. GUIBERSON

(No. 1051; September 4, 1923; 217 Pac. 1087.)

JOINT ADVENTURE—OBLIGATIONS OF JOINT COADVENTURERS—APPEAL AND ERROR—LEASEHOLDS—ACCOUNTING BETWEEN COLESEES—BILL OF EXCEPTIONS—EXTENSION OF TIME FOR PRESENTATION—WITHDRAWAL OF BILL FOR CORRECTION—NARRATION OF TESTIMONY IN OMITTED DEPOSITION—AUTHENTICATION OF TRANSCRIPT OF TESTIMONY.

1. While a joint adventure and a partnership relation are not identical, they are governed largely by the same principles of law, the distinction being that a joint adventure usually relates to a single transaction though it may comprehend a business to be continued for a period of years.

2. It is the duty of coadventurers as well as partners, to observe the utmost good faith toward each other in all their dealings since they occupy a fiduciary relationship among themselves within the scope of the business of the enterprise.

3. A lessee of oil land, held to have ratified a sublease with knowledge of the interest claimed by a colessee, and hence not entitled to an accounting of amounts received by the latter in excess of the value of the interest which the former thought him entitled to, in the absence of evidence of any breach of good faith.

4. A joint adventurer may in good faith dispose of his interest to a third person.

5. The sixty day period allowed by Comp. Stats. 1920, Sec. 5864, within which to reduce exceptions to writing, and present the same for allowance, after order overruling motion for new trial, cannot be reduced by Court order to the exceptant's prejudice.

6. Orders made before the expiration of time for presenting a bill of exceptions for allowance extending time, "Within which to file bill of exceptions," are to be understood as intended to grant the extension of time for the preparation and presentation of the bill, that being the only purpose for which an extension of time was necessary.

7. Indorsements on and judges' certificates and recitals in the bill of exceptions *held* to show its timely presentation for allowance and its subsequent withdrawal solely for correction, as permitted by Comp. St. 1920, § 5867, notwithstanding a certificate subsequent to such withdrawal that it was "again presented."

8. A bill of exceptions omitting depositions of witnesses, whose testimony was stated in narrative form, as counsel for plaintiff in error understood the evidence, *held* not so imperfect that it could not be regarded as in proper condition for presentation.

9. A bill of exceptions accepted by the court as containing all the evidence is sufficient, though the transcript of the testimony is not authenticated by the court reporter's certificate.

ERROR to District Court, Converse County; RALPH KIMBALL, Judge.

Action by S. A. Guiberson, Jr. against Julius Fried and wife for an accounting of proceeds acquired from an assignment of defendant's interest in an oil lease. There was a judgment for plaintiff and defendants bring error.

*W. C. Shelton* and *Maurer* and *Walker* for plaintiff in error.

The decision of the trial Court is contrary to law; the evidence established the fact that when Humphreys assigned to Fried an interest in the Mau sublease of Glenrock Sheep Company and Fenex, the plaintiff had long prior thereto, disposed of all interest therein; no confidential relationship existed; the petition does not state a cause of action; there is a failure to join necessary parties defendants. The judgment of the trial Court is not sustained by the evidence. The law governing such transactions as are presented in this case by the written agreements of the parties and their testimony at the trial is not in controversy; it is the application of the law to the facts that raises the issue; practically the last word in the law of joint adventure is set forth in, (Lind v. Weber, Ann. Cas. 1916 pp. 1210-1217, same case reported in 134 Pac. 461; 135 Pac. 139, 141 Pac. 458, see also 15 R. C. L. 501, and Prince v. Lamm, 128 Cal. 120, and Home v. Owen Co., 154 Fed. 820.)

*Robert D. Hawley* and *A. V. Andrews* for defendant in error.

The case rests wholly upon the facts as disclosed by the evidence; the judgment of the trial Court is fully sustained by the evidence; the parties were coadventurers; there is not a shadow of reason why defendants should acquire unto themselves as against the plaintiff, for no consideration other than a trifling advance of expense money, the entire ownership and the fruits derived from the capital end of the syndicate as to the properties obtained as they were, admittedly through the information, knowledge and activities and at the expense of the entire syndicate, within

the scope of the syndicate agreement as established by the evidence. We direct the attention of the Court to the Chapter on joint adventure as set forth in Vol. 15, R. C. L. 501, and Lind v. Weber, Ann. Cas. 1916A pp. 1002-1217. The bill of exceptions should be stricken for the reason that it does not contain all of the evidence. (Hardin v. Card, 14 Wyo. 479), the bill of exceptions was not presented for allowance within the time. (Meadows v. Roberts, 21 Wyo. 43.) The withdrawal of the bill for correction was in fact an attempt to present an entirely new bill of exceptions which is not permissible. (Martin v. R. R. Co., 53 Ark. 252.) A bill unintelligible, confused or conflicting, will be interpreted against the appellant. (McReynolds v. Jones, 30 Ala. 101; Spahn v. People, 137 Ill. 546; Stout v. Woods, 79, Ind. 109; State v. Johnson, 36 La. Ann. 852; Price v. Powell, 3 N. Y. 322; Holliston v. Reynor, 9 O. St. 1; Walker v. State, 19 Tex. App. 176; French v. Ware, 65 Va. 338; Hanna v. Mass. 122 U. S. 24; Suydam v. Williamson, 20 Howard (U. S.) 427.) Courts will not look with favor upon defective pleadings that have caused inconvenience. (Meyer v. Binkleman, 5 Colo. 133.) A second extension of time within which to present a bill cannot be granted in vacation. (Sweetser v. McCrea, 97 Ind. 404; Missouri R. Co. v. Russell, 60 Fed. 501.) Attorneys for defendant in error received no notice of either the first or second applications for extension of time within which to present bill of exceptions; this is clearly contrary to all good practice, if not contrary to law. (Taylor v. Dare, 4 Colo. App. 109; Dicky v. Bruce, 21 Ill. App. 448; New Albany Ry. Co. v. Wilson, 16 Ind. 402; cases reported in 19 Ind. 138; 24 Ind. 346; 25 Ind. 417; Purcell v. Boston etc., 151 Mass. 158; Hemphill v. Morrison, 112 N. Car. 756; McKay v. Union R. Co., 13 Mont. 15.) 5864 C. S. makes no provision for more than one extension of time; the extension must be secured before expiration of time limited in the first order. (Furnace Co. v. Glasscock, 86 Ala. 244.)

*W. C. Shelton,* opposing motion to strike bill of exceptions.

The bill was prepared, presented, corrected and settled in compliance with the Statutes of Wyoming; decisions from other States having little or no bearing on the question. (Hardin v. Card, 14 Wyo. 479.) Some of the exhibits were missing from the Court files; a mass of documentary exhibits was submitted under a stipulation that everything attached to the depositions of Arnold and Mau should be considered by the Court, if deemed competent or material; fully 80 per cent of this documentary evidence was not used by counsel or relied upon by the Court in reaching its decision; the bill contained a narration of the deposition evidence; no new bill was presented to the trial Court, but only additions suggested by that Court. The trial Judge resigned to take a place on the Supreme Court; counsel for defendant was absent in another State hundreds of miles distant; the official reporter resigned and left the State; one of counsel for plaintiff in error resided on the Pacific Coast; there is no just ground for charging plaintiff in error with needless delay. The motion should be denied.

ILSLEY, District Judge.

This case is here on error, and was heard upon a motion to strike the bill of exceptions and also at the same time on the merits. The motion to strike the bill will be denied for reasons to be stated in an opinion by the Chief Justice.

In April, 1915, the parties involved in this suit embarked upon a joint adventure. Mr. Waltemeyer, a geologist, interested another geologist, Ralph Arnold, of California, in the development of the Big Muddy Oil Dome in Wyoming. It was agreed that those participating in the joint adventure should share in the profits in the following manner; Those furnishing the capital were to receive 50%, and those doing the labor in the field were to receive 50%. Mr. Arnold interested the defendant, Julius Fried,

who put in $250, and later a Mr. Whitley put in $125 and
the plaintiff Guiberson put in $125. Mr. Arnold and Mr.
Waltemeyer were to share their profits in the adventure
with a Mr. Charles A. Mau, an associate of Mr. Arnold's,
so that in the beginning Waltemeyer, Arnold and Mau,
who were to do the labor, were to receive 50%, and those
furnishing the capital were to receive the following inter-
ests: Guiberson a $\frac{1}{8}$, Whitley a $\frac{1}{8}$, and Fried a $\frac{1}{4}$ inter-
est. With the money thus raised, Mau and Waltemeyer
came to Wyoming and procured oil leases on several hun-
dred acres of land in the Big Muddy field. Upon this trip
it was found that certain of these lands were patented and
other lands belonged to the State of Wyoming, and there
seems to have been some discussion among the joint ad-
venturers as to whether or not it was advisable to procure
these leases. In any event, after a second and third trip
to Wyoming, two leases were obtained upon patented
lands known respectively as the Glenrock Sheep Company
and the Fenex leases. These leases were secured by Mr.
Waltemeyer and were taken in the name of Charles A.
Mau. In the beginning powers of attorney were given
Mau by the various members of the adventure, and though
the leases were taken in Mau's name they were to be held
in trust for the syndicate, the leases thus being left in es-
crow until drilling should be commenced. These leases
were obtained on May 11 and May 14, 1915, and on the
29th day of May, 1915, Julius Fried, one of the defendants,
as one party, and Charles A. Mau, Ralph Arnold and T.
S. Waltemeyer, the other parties, entered into an agree-
ment whereby Fried, in consideration of financing the
procurement of oil and gas leases on private patented
lands, was to receive a 50% interest in the leases and the
second parties were to receive jointly a 50% interest, and
in this agreement it was recited that Mau had obtained for
the benefit of all of the parties to the agreement the oil
land leases known as the Glenrock Sheep Company and
Fenex leases.

It will be remembered that Charles A. Mau was acting as trustee for all of the parties to this venture, handled most of the correspondence and did a great deal of work in obtaining leases and taking care of the business affairs of the syndicate. Now, in July, 1915, Fried withdrew from Mau his power of attorney, and, as one of the witnesses puts it, there was a general row. The plaintiff Guiberson was claiming an interest in the Glenrock Sheep Company and Fenex leases, and Fried, by reason of the agreement referred to of May 29, claimed to have a 50% interest in the leases. And in October, 1915, Guiberson made a claim to an interest in these leases to the same extent that he had an interest in the original leases obtained by Waltemeyer on his first trip to Wyoming. Mau told the plaintiff that he would not assign or deal with the leases without protecting Guiberson's interest. On the first day of July, 1916, Mau subleased all of the Glenrock Sheep Company and Fenex lands to A. E. Humphreys in consideration of $12,500 cash and a $2\frac{1}{2}\%$ royalty on all oil produced over and above that which was to be paid by Mau to the Glenrock Sheep Company and Fenex as provided for in the original leases. At this time there was a good deal of contention among the co-adventurers. The defendant Fried warned Mau not to dispose of his interest in the leases, and Waltemeyer did the same. Both of them stated that they would deal with their own interests in the matter.

After the sublease was made to Humphreys, Mau wrote a long letter to Arnold, Whitley, Guiberson, Fried and Waltemeyer, in which he defined what he considered to be the interest of each and all of them. It fully appears from the testimony that Humphreys knew of the contentions among the members of the syndicate and immediately after obtaining the subleases from Mau proceeded to procure a ratification of the sublease from the members separately. Humphreys knew that Fried and Waltemeyer were objecting to Mau dealing with their interests, and

knew that there were conflicting interests claimed in the sublease. On September 14, 1916, by a letter, Guiberson ratified the lease made by Mau to Humphreys. In October of the same year, Humphreys secured the ratification of the lease by Fried and Waltemeyer, and in a separate instrument assigned to Fried and wife and Waltemeyer and wife all his interest in the sublease to him by Mau as to 480 acres (described by legal sub-divisions) of the 680 acres described in that lease; the ratifying agreement reciting that Fried and Waltemeyer, with their wives, claim to own a two-thirds interest in the original leases, and the assignment agreement reciting that their interests in the assignment are in the proportion of ¾ to Julius and Dorothy Fried and ¼ to T. S. and Alice Waltemeyer.

Thereupon this suit was started by Guiberson in the district court of Converse County to compel the defendants Fried and wife to account for any and all moneys and property that they had acquired more than an undivided ¼ interest in the leases, and the effect of the prayer of the petition is that the defendants be declared to hold in trust for plaintiff an undivided three-sixteenths (3/16) interest in the rights obtained by them from Humphreys in said sub-lease, and required to account for all they have acquired by means of asserting more than a one-fourth interest in said leases. The district court, after a full hearing, entered its decree for the plaintiff, in which judgment and decree it is recited, in substance and effect, that Guiberson is the owner of a 3/16 interest in that portion of the Mau lease assigned to Fried and wife, said interest being held in trust for him by said defendants, and directed that they convey and assign said interest to the plaintiff, and that in default thereof the decree shall operate as such conveyance and assignment; also that they assign to plaintiff an undivided 3/16 interest in all bonus money held in trust for him under Humphreys' said assignment to defendants. From that judgment said defendants prosecute this proceeding in error.

It is recited in the agreement assigning an interest in the Mau sub-lease to Fried, Waltemeyer and their wives, that it is in consideration of the covenants and agreements "herein made," and of the observance of the conditions and terms of the lease. And that assignment agreement contains several covenants and promises by the assignees. For example: To keep and perform each of the terms, conditions and provisions of the "Mau lease" applicable to the lands subleased, on default of which certain penalties are provided; that the actual drilling of the well upon the Fenex lands shall be commenced on or before February 15, 1917, instead of March 1, 1917, as provided in the Fenex lease, and that the assignees shall thereafter diligently prosecute said drilling, as provided in the Mau-Humphreys lease, and that the respective parties to that assignment agreement "will co-operate in the number of wells to be put down in order to protect the original leases and the Mau lease;" that the $12,500 bonus provided for in the Mau-Humphreys lease shall stand against the lands leased in proportion to the area thereof, "and that the proportional amount to be paid by the lands 'hereby assigned and sub-let" is $7142.85. The ratifying agreement mentions the fact of said assignment of an interest in the Mau-Humphreys lease, and recites that said ratifying agreement is made to reach an amicable settlement of a dispute as to the validity or binding effect of said lease, so as to allow the continuance of operations under it by Humphreys, and "in consideration of the mutual covenants and other good and valuable considerations passing between the parties."

It is admitted by all the parties in this case that it is an action involving a joint adventure. We are therefore concerned with the principles of law governing joint adventures. While a joint adventure and a partnership relation are not identical, yet they are governed largely by the same principles of law. As was stated by this Court, "A

joint adventure partakes of the nature of a partnership and is governed substantially by the same rules of law; the principal distinction being that a joint adventure usually relates to a single transaction though it may comprehend a business to be continued for a period of years.'' Reece v. Rhodes, 25 Wyo. 107, 165 Pac. 449. See also Hoge v. George, Admr., 27 Wyo. 423; 200 Pac. 96, 18 A. L. R. 469.

Perhaps one of the most important things to investigate in this case is the action of each adventurer toward the other and the question of his good faith in the premises. That is, did the co-adventurers, in the eyes of the law, conduct themselves toward each other and their trusts in such a manner in the disposition of his or their interest so that no one was misled? For it is the duty of a co-adventurer, as well as partners, to observe the utmost good faith toward each other in all their dealings. Co-adventurers occupy a fiduciary relationship among themselves and within the scope of the business of the enterprise, and the conduct of all transactions or negotiations must be such that all are in good faith and no one is misled. 22 Am. & Eng. Ency. of Law, 114; 30 Cyc. 454.

What, then, was the situation with reference to Guiberson's claim for an interest in the sublease that Humphreys made with Fried? And this is all that we are concerned with, because there are no other parties to the suit, although Waltemeyer joined in the sublease with Fried and Humphreys and obtained a part of the consideration for that sublease.

During all of the time that Humphreys was negotiating with Mau for the Glenrock Sheep Company and Fenex leases, Guiberson, Mau and Fried were fully advised of what each were claiming in the joint adventure, because it was before this time that Fried and Waltemeyer had revoked the power of attorney previously given to Mau; and Guiberson had demanded of Fried an interest in the Glenrock Sheep Company and Fenex leases. Mr. Guiberson, testifying in his own behalf with reference to the rati-

fication of the lease, stated: Q. Did you comply with the suggestion of Mr. Mau and ratify the lease to Mr. Humphreys? A. I did some time later. I wrote Mr. Humphreys ratifying the lease. (By Mr. Shelton): Beg pardon? (By the witness): I wrote Mr. Humphreys ratifying the lease. (By Mr. Hawley): I hand the witness paper marked for identification Plaintiff's Exhibit L and ask him to state what that is. A. That is a carbon copy of a letter written by me to Mr. A. E. Humphreys. Q. Is that a manifold carbon copy from your files? A. It is. Q. What is the date? A. September 14, 1916. And further testifying on cross examination, the witness Guiberson stated:

Q. At that time the property known as the Glenrock Sheep Company and Fenex leases were standing in the name of Charles A. Mau as trustee, were they not?

A. What date?

Q. Fall of 1916. A. Up to July 1st, yes.

Q. Now, at that time your own claim was for an undivided one-eighth interest in and to those lands, wasn't it?

A. Up to that time?

Q. You had served him notice at his request and suggestion, claiming that interest, I believe you said, and the letter is in evidence.

A. I simply put in writing what I made—the verbal demand I made at Casper.

Q. And you said Mr. Mau agreed with you that the lease stood in his name and he would see that you got that interest?

A. Said he would not make any assignment and that he would not lease without clearly setting forth what my rights in that lease would be.

Q. Well, Mr. Mau kept his word, did he not, when he made his lease to Mr. Humphreys? A. He did.

Q. And told Mr. Humphreys exactly what your interest was?

A. In that letter, yes.

Q.  You believe he took it up with Mr. Humphreys at that time, don't you.  A.  I think so, yes.

Q.  Then you have ratified that Humphreys lease, have you not?

A.  I did under the conditions that it looked as though if I didn't the lease was going to be lost.

Q.  So to serve your own best interests as you saw it, you ratified the lease?

A.  I wasn't looking out after anybody else at that time.

It therefore clearly appears from the testimony of the plaintiff himself that he did ratify the lease to A. E. Humphreys of his own free will and accord; that he made the deal knowing what Fried's claim or interest in the Glenrock Sheep Company and Fenex leases was, and after having disposed of all of his right, title and interest in the property, we are confronted with the question as to what right he now has to complain of what the defendant Fried procured from Humphreys for his ratification of the lease. All of the co-adventurers were dealing, so to speak, at arms length; each asserted the right to dispose of his own interest as he saw fit and to obtain the best price possible therefor. We are unable to see how it is that one co-adventurer can dispose of his interest to what he considered his own best advantage and then compel a co-adventurer to account to him because a better deal was made or a better price obtained. This, of course, would not be true if a co-adventurer was misled, misinformed, or a breach of good faith in any manner shown.

It must be remembered that in this whole transaction, Fried did not presume to act for Guiberson in any capacity, trustee or otherwise. Fried asserted his right to sell his interest in the joint adventure, to whom, and for a price satisfactory to himself. True, Fried was claiming more of an interest than Guiberson thought he had. But Guiberson ratified the sublease of Mau to Humphreys, and

in so doing made his own contract and accepted for his share in the business a satisfactory consideration.

It is generally held that a partner may dispose of his interest to a third person. 30 Cyc. 458. And we see no reason why a joint adventurer is not able so to do. In Jones v. Way, 78 Kans. 535, 97 Pac. 437, 18 L. R. A. (N. S.) 1180, the court said:

"The main contention is that the plaintiff had no right to buy an interest in the partnership without the consent of all the other partners, and such seems to be the theory upon which the judgment was rendered. To this we cannot agree. The interest of each partner in the partnership property is his share of the surplus after payment of all partnership debts and settlement of all accounts between himself and his partners. Sanborn v. Royce, 132 Mass. 594; Nicoll v. Mumford, 4 Johns. Ch. (N. Y.) 522. A partner may dispose of his interest in the partnership to a third person. The only limitation on this right is that he cannot by such transfer introduce the purchaser into the firm without the consent of the other partners. 22 A. & E. Enc. of Law, 104, 105, and cases cited. In equity the purchaser acquires the right to call for an accounting and settlement. Bank v. Carrollton Railroad, 78 U. S., 11 Wall. 624, 20 L. Ed. 82."

Treadwell v. Williams, 22 (N. Y.) Sup. Ct. 649; See also Farmer's Saving Bank v. American Trust Co., 196 S. W. 35 (Mo. App). And in Williamson v. Dawson, 272 Pa. 370, 116 Atl. 297, a member of a joint adventure who sold his interest to another was held not entitled to an accounting where no fraud was shown. See Rankin v. Kelly, 163 Ky. 463, 173 S. W. 1151. In Goodwin v. Smith, 144 Ky. 41, 137 S. W. 789, Goodwin obtained a valuable oil lease by arrangement in the name of Smith. The court said:

"The second amended petition alleges that, under the direction of appellant, appellee transferred to him a one-fourth interest and to Dunbar and Meredith a one-eighth interest each. This, according to the petition, represented his entire interest in this partnership holding, and completely settled and disposed of the partnership feature of the transaction. After the transfer to Dunbar had been made the only interest that appellant had in the matter was to see that the $250.00 which Dunbar had agreed to give for this interest was paid. It is immaterial to him what Dunbar did with his interest. He had a perfect right to transfer his bid and purchase to any one with whom he could make satisfactory terms, and appellee was under no obligation whatever, in buying this interest for which Dunbar had contracted, to take the title thereto as trustee for the use and benefit of appellant. He had a perfect right to buy for himself. Appellant only claims to have owned a one-half interest in the lease. When he had transferred these interests as directed by appellant he had fully discharged his duty as trustee, and hence, in purchasing the interest for which Dunbar had contracted, he violated no duty to appellant."

We find nothing in the record that in any way prevented Fried from dealing with his own interest as he saw fit. Accordingly the judgment of the district court is reversed and it is ordered that the cause be remanded with directions to dismiss the petition of the plaintiff.

*Reversed and Remanded with Directions.*

POTTER, Ch. J., and BLUME, J., concur.

POTTER, Chief Justice.

The substance of the several objections included in the motion to strike the bill of exceptions from the record is that the bill was not presented for allowance within the time required by law. The judgment complained of was rendered upon a trial of the cause without a jury on May 29, 1920. A motion for a new trial duly filed, stating as

grounds that the court had erred in certain rulings upon
the trial and that the decision was not sustained by suf-
ficient evidence and was contrary to law, was heard and
overruled on October 21, 1920, and an exception was duly
reserved to the ruling.   Our rule 13 provides that in a
proceeding in error nothing will be considered which could
have been properly assigned as a ground for a new trial
in the court below, unless it shall appear that the same
was properly presented to that court by a motion for a
new trial, that the motion was overruled and an excep-
tion reserved to such ruling.   And the date of the over-
ruling of such a motion, as to matters necessary to be pre-
sented thereby under said rule, is taken and accepted by
this court as the date of the "judgment, decree or final
order" from which the period prescribed by statute will
run, for reducing exceptions to writing and presenting the
same for allowance.   See Gilpatrick v. Perry, 26 Wyo. 538,
188 Pac. 442; Harvester Co. v. Jackson L. Co., 25 Wyo. 367,
170 Pac. 6; Chatterton v. Bonelli, 27 Wyo. 301, 196 Pac.
316.   The said motion for a new trial having been neces-
sary for a consideration here of the grounds alleged in the
motion, which include all the grounds asserted in this
court for a reversal of the judgment, the period lim-
ited by law for presenting the bill for allowance is to be
computed from October 21, 1920, the date on which the
motion was overruled.   The statute referred to (C. S.
1920, § 5864) reads as follows:

"The party objecting to the decision must except at the
time the decision is made, and shall have sixty days from
and after the date of the judgment, decree, or final order
in the case within which to reduce the exception to writing
and present the same to the court or judge for allowance.
If within said sixty days the party excepting shall make it
satisfactorily to appear to the court or judge authorized to
allow the bill of exceptions that the party will be unavoid-
ably prevented from presenting the bill within said time,

the court or judge by written order may extend said time, but not to exceed sixty additional days."

The date of the expiration of the first period of sixty days under that statute, in this case, was December 20, 1920, and sixty additional days might be granted, or up to and including February 18, 1921. The bill shows the motion for a new trial aforesaid, that it was filed within the time required by law, that it was heard and overruled on the date above mentioned, and that the defendants, plaintiffs in error here, excepted to that ruling. The order overruling the motion also states that the defendants "are given up to and including the 19th day of December, 1920, within which to file their bill of exceptions." But the statute granted until December 20 without an order, and that time could not be reduced to the exceptant's prejudice. Morgan v. State, 26 Wyo. 212, 181 Pac. 598. Nor do we think a reduction was intended. The date stated in the order was probably the result of an error in computing the statutory period. The history of the bill as shown by its recitals is as follows: On December 20, 1920, upon an affidavit and motion of the defendants below filed on December 17th, 1920, an order was made by the trial judge (Judge Kimball), then also the judge of the said district court, extending the time up to and including January 15, 1921. On January 13, 1921, an affidavit and motion of the defendants for a further extension of said time was filed in said court, and on that date an order was made by the trial court, Judge C. O. Brown presiding, he having become the judge of said court by appointment as the successor of Judge Kimball upon the latter's appointment and qualification as a justice of this court, granting a further extension of time up to and including February 15, 1921. That order is shown by a recital in the bill and also by a transcript of the journal entries in the cause, each showing it to have been a court order. This, we think, shows an authorized extension of the time for presenting the bill up

to and including the last mentioned date. Each extension order was made before the time originally allowed or as extended had expired. The fact that the extension orders stated that the time was extended "within which to file bill of exceptions," instead of stating that the time was extended for reducing the exceptions to writing and presenting the same for allowance, is immaterial, since the above quoted words used in the order are to be understood as intended to grant time for the preparation and presentation of the bill; that being the only purpose for which an extension of time was necessary. Jones v. Bowman, 10 Wyo. 47; 65 Pac. 1002.

The following endorsements appear on the first page of the bill: "This bill of exceptions presented to me on February 12, 1921. Ralph Kimball, Trial Judge." "This bill of exceptions presented for allowance February 14, 1920. C. O. Brown, Court Judge." On page 331 of the bill, following what appears to have been the bill as originally presented, appears a certificate signed by Judge Kimball as the trial judge, dated May 20, 1921, and reciting: "The attorneys for defendants having, on the 12th day of February, A. D. 1921 and within the time allowed by the order of court within which defendants should present their bill of exceptions in said cause, presented to the undersigned before whom said cause was tried their bill of exceptions in said cause and asked that same be allowed and filed * * *, and it appearing to said Trial Judge that some of the exhibits introduced in evidence upon the trial were missing from said bill of exceptions, and also missing from the court files, the approval of said bill of exceptions was withheld and counsel directed to locate if possible the missing exhibits and incorporate same in said bill of exceptions. And said bill of exceptions having again on the 13th day of May, A. D. 1921, been presented to the undersigned for allowance and it appearing that said exhibits are now incorporated within said bill of exceptions, but that upon comparison of the bill of exceptions with the

transcript of the record, the narrative form in which it appears does not contain all of the evidence as shown by the transcript of the testimony, approval thereof is withheld,'' and defendants granted leave to withdraw the same for the purpose of amending it by attaching thereto the original transcript of the evidence and the original depositions of Charles A. Mau and Ralph Arnold.

On page 327 of the bill appears a certificate, of Judge Brown, reciting May 17, 1921, as its date, allowing the bill upon its appearing that the exhibits formerly missing from the bill had been incorporated therein. Immediately following the certificate of Judge Kimball aforesaid of May 20, 1921, it is recited in the bill: ''Amendment of Defendant's Bill of Exceptions. The foregoing bill of exceptions having been presented to the trial judge for approval and allowance, which approval was withheld for the reason that the narrative form in which the testimony and proceedings were abstracted did not contain all of the evidence as shown by the original transcript in said cause and the depositions offered upon the trial, defendants submitted the following amendments to said bill of exceptions in the form of the original transcript of the testimony and proceedings had upon the trial of said cause and the original depositions of Charles A. Mau and Ralph Arnold introduced at said hearing.'' And following that appears what is entitled ''Transcript of Oral Testimony.'' Then follows the final certificate of Judge Kimball as the trial judge, allowing the bill. That certificate repeats the recitals of his former certificates to the effect that the bill had been presented within the time allowed by the order of the court; that approval thereof was withheld because of the omission of some of the exhibits which were also missing from the court files, and counsel directed to locate if possible said exhibits and incorporate them in the bill; that the bill was again presented on May 13, 1921, whereupon, it appearing that the exhibits theretofore missing had been incorporated in the bill, but that upon compari-

son of the bill with the transcript the narrative form in which it appeared did not contain all of the evidence, approval thereof was again withheld, and defendants, on the 20th day of May, 1921, withdrew said bill for the purpose of amendment by attaching thereto the original transcript of the evidence and the original depositions of Charles A. Mau and Ralph Arnold, and then continues: "Now, on this 21st day of May, A. D. 1921, counsel for defendants having again presented to the undersigned the foregoing bill of exceptions and amendments thereto for approval, and it appearing that said bill of exceptions and the amendments thereto now contains all of the record and evidence submitted upon the trial in said cause, it is therefore ordered that the within and foregoing bill of exceptions be and the same is hereby settled and allowed. * * *. And I hereby certify that the same is a full, true and complete and correct statement of the proceedings had in said cause and contains all of the evidence which was presented to the court for consideration therein."

The above facts recited in the bill clearly show, in our opinion, its timely presentation, and that its withdrawal thereafter was solely for the purpose of correction as permitted by the statute, which provides that "if the writing is not true, the court or the judge in vacation shall correct it, or suggest the correction to be made, and it shall then be signed as aforesaid." Compiled Statutes 1920, § 5867. The statement in the certificates subsequent to the withdrawal of the bill on the occasions mentioned, that it was "again presented" is not to be understood as destroying the effect of the original presentation of the bill or as a corrected date of such presentation. For it is very clear from the recitals and the certificates that the bill as presented was directed to be withdrawn for correction or amendment only, the court or judge retaining control of it under its original presentation until it was finally approved, settled and allowed.

We cannot agree with the argument that the bill was so imperfect when originally presented, because of the omis-sion of evidence, that it could not be regarded as a bill in proper condition to be presented. While the original de-positions of Mau and Arnold which were read in evidence upon the trial were omitted from the bill as presented, the testimony of those witnesses was stated in narrative form, as well as the remainder of the testimony and the evidence, and no doubt, as counsel for plaintiff in error understood the evidence. But following the usual practice in this jurisdiction of showing the evidence in a bill of exceptions by a transcription of the reporter's notes, the district judge evidently preferred that method as more likely to secure the inclusion of all of the evidence in the case. See State v. Craig, 15 Wyo. 439, 89 Pac. 584. It was said by this court in Harden v. Card, 14 Wyo. 479, 85 Pac. 246:

"The statute contemplates that a bill may require cor-rection before allowance and signing and expressly per-mits the court or judge, if the writing be not true, as pre-sented, to correct it or suggest the correction to be made, and then to sign it. We observe nothing in the statute which requires that a bill presented in time shall be ready for signing before the expiration of the time granted for reducing the exceptions to writing. It may be conceded that it is the duty of a party  *  *  *  to prepare and pre-sent a bill fairly and fully setting forth the facts upon which the rulings of the court excepted to were made; and that the draft so presented should state all the evidence, as he understands it, upon which the verdict or findings were based, where the exception is to the overruling of a motion for a new trial on the ground that the verdict or findings are not supported by the evidence; and we think such a duty does rest upon the exceptant.  *  *  *  It can-not, however, be doubted that, if all the facts are not set out in full or as the court or judge understands them, or if all the evidence is not embraced in the draft as pre-

sented, where it should be embraced to properly explain the exception, the court or judge may make or cause the necessary corrections to be made to conform the bill to the truth, not only by changing incorrect statements of fact, and striking out matters improperly included, but by adding omitted evidence.  *  *  *." ⁽ᶦ⁾

We think that was all that was done in this case by the correction and amendment of the bill under the direction of the court before its allowance.  The point made with reference to the transcript of the testimony in the bill, that it is not authenticated as official by the certificate of the court reporter, is not a good objection to the bill, the court having accepted it as containing all of the evidence. As this court said in Fishback v. Bramel, 6 Wyo. 293, 44 Pac. 840: "In this court the certificate of the stenographer furnishes no vitality to a bill of exceptions.  It may have been persuasive upon counsel and the court in the matter of settling and allowing the bill, but it is otherwise unimportant, so far as the verity of the bill is concerned. The law has required the bill to be otherwise signed and authenticated."  The same in substance was said also in Seng v. State, 20 Wyo. 222, 122 Pac. 631.  And see Koppala v. State, 15 Wyo. 398, 89 Pac. 576; 93 Pac. 662.

*Motion to Strike Denied.*

BLUME, J., and ILSLEY, District Judge, concur.

NOTE—Headnotes Nos. 1-4, see Joint adventures, 23 Cyc. 453, 455, (1924 Anno); 5-9 see Appeal and Error, 4 C. J. Secs. 1832, 1846, 1855, 2155; (1924 Anno.)